[Crim. No. 3178. Fourth Dist., Div. Two. Nov. 24, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYMOND R. HATCHER, Defendant and Appellant.

## COUNSEL

Edward F. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James L. Markman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**TAMURA, J.**—Defendant was convicted of driving a motor vehicle without the owner's consent (Veh. Code, § 10851) and found to have suffered three prior felony convictions as charged, each for theft of an automobile. He was denied probation and sentenced to state prison, sentence to run concurrently with any other uncompleted sentence. Defendant appeals from the judgment of conviction.

The evidence may be summarized as follows: On the evening of October 13 a resident of Needles reported to the Needles Police Department that his stationwagon was missing. The following morning Officer Cairns of the Highway Patrol received a report that a vehicle matching the description of the missing stationwagon had been seen abandoned about 5 miles west of the village of Essex (Essex is about 40 miles west of Needles). About 8 a.m. Cairns proceeded to the abandoned vehicle. En route he saw a man attired in a black and red mackinaw jacket and light blue trousers walking on the highway near a combination grocery store and service station in Essex. When he reached the abandoned vehicle, Cairns ascertained that it was the missing stationwagon, checked the area and found "pointed footprints similar to those made by cowboy boots." He drove back to Essex and attempted to locate the man he had previously seen but was unable to find him. He radioed his office and reported that the stolen vehicle had been found and furnished a description of the man he had seen in Essex, including the fact that he might be wearing cowboy boots.

Later the same morning around 9 a.m. Officer Rathbone of the Needles Police Department saw defendant at a service station in Needles. Defendant was wearing a red and black checked mackinaw, light blue trousers and western boots and was attempting to get into an automobile which the police had picked up in Needles and stored at the service station. Defendant and one Belcher were co-owners of the vehicle. Officer Rathbone having overheard defendant ask the attendant if he knew where Belcher might be found, told defendant that Belcher was in jail in Needles. Rathbone then

called the police department and shortly thereafter Officer Orsbern arrived. Orsbern had previously received a report of the stolen automobile and a description of the person Officer Cairns had seen in Essex. Orsbern asked defendant whether he would mind going to the police station with him. Defendant agreed to do so and was placed in the rear of a police vehicle which was equipped with wire mesh between the front and rear section. On the way to the police station Orsbern advised defendant of his rights and asked him if he had been in the Essex area. Defendant responded that he had not left the city limits of Needles. Upon arrival at the police station defendant was requested to remove personal items from his pockets and was taken back to the "squad room" where in the presence of four officers, he was warned of his rights and interrogated with respect to the missing vehicle. During the interrogation Officer Cairns was summoned and upon his arrival Orsbern asked defendant if he had been out of town to which defendant responded, "No." Officer Cairns then said, "That's strange, I had seen you at Essex this morning at 8:00 o'clock." Whereupon defendant replied, "Okay, I took it." Defendant stated that he ran out of gas, abandoned the vehicle, walked to Essex, and got a ride from Essex to Needles.

Defendant took the stand and testified in his own behalf. He denied taking the stationwagon, stated that he had been drinking for several days, that at the time he was interrogated at the police station he was a "little rum-dumb," and that he confessed because he was afraid that the officers were going to do something to him although he admitted that no threats were made.

The controlling issue is the admissibility of defendant's confession. That issue in turn depends upon the validity of his arrest.

■ The essential elements of an arrest are: (1) taking a person into custody; (2) actual restraint of the person or his submission to custody. (Pen. Code, §§ 834, 835; Witkin, Cal. Criminal Procedure (1963) § 89, pp. 91-92) Although Officer Orsbern testified that defendant was not under arrest when he was requested to go to the police station, it is probable that he was under arrest when he was placed in the police vehicle. (*People* v. *Terry,* 240 Cal.App.2d 681, 685 [50 Cal.Rptr. 120]; *People* v. *Gibson,* 220 Cal.App.2d 15, 21 [33 Cal.Rptr. 775].) ■ In any event he was clearly under arrest when he was transported to the station, ordered to empty his pockets and taken to the squad room for interrogation. He was then in custody and not free to leave. The restraint went far beyond temporary detention for the purpose of making reasonable inquiries. (See *People* v. *Terry, supra,* 240 Cal.App.2d 681, 685.)

■ On the uncontradicted evidence the officers did not have probable cause to arrest defendant. ■ "Reasonable or probable cause [to

arrest] exists when the facts and circumstances within the knowledge of the officer at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense." (*People* v. *Hogan*, 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Talley*, 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].) ■ The existence of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officer at the time the arrest was made. (*People* v. *Talley, supra,* p. 835; *People* v. *Privett*, 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602].)

In *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], the reviewing court found that there was no probable cause to arrest where the actual robber was described as a fairly tall, white man of large build with dark hair, wearing a red sweater, and the police arrested a man wearing a red sweater and fitting the general description of the reported robber. He was driving towards the scene of the robbery some 20 minutes after it occurred. In *People* v. *Gibson, supra*, 220 Cal.App.2d 15, probable cause was held to be lacking where the robber was reported to be wearing a leather coat, dark hat and dark glasses and the man who was arrested was driving in the vicinity of the robbery some 20 minutes after its occurrence and had in his possession a pair of sunglasses, dark hat, and a leather coat. The court stated at page 25: "It also appears from *Mickelson* that similarity of the suspect's clothing, if the clothing is not particularly uncommon, to the reported robber's, is not sufficient justification for an arrest and search."

■ In the instant case apart from the fact that the clothing worn by the defendant may not have been "particularly uncommon" for the Needles area, the facts linking defendant with the crime were much more attenuated than in *Mickelson* and *Gibson*. In those cases the officers had a description of the actual robber furnished either by the victims or witnesses. In the present case the only information possessed by Officer Orsbern was a description of a man seen some 5 miles from the abandoned vehicle. We conclude that defendant's arrest was invalid.

■ The remaining question is whether the illegal arrest rendered defendant's confession inadmissible.[1]

The principles by which we must be guided in the resolution of the foregoing issue were recently enunciated in *People* v. *Sesslin*, 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321], where the court held that

---

[1]Of course, illegality of an arrest is not, in and of itself, a defense to a criminal prosecution. (*People* v. *Bradford*, 70 Cal.2d 333, 342 [74 Cal.Rptr. 726, 450 P.2d 46].)

procurement of defendant's handwriting exemplar during his detention following an illegal arrest violated his Fourth Amendment rights despite the fact that before it was obtained defendant had been warned of his constitutional rights and told that he had a right not to give an exemplar. ▇ In holding such evidence to be inadmissible the court laid down the following principles: (1) "The state may not use evidence to convict an accused which it obtained by exploiting an illegal *arrest* or detention." [Italics supplied.] (Pp. 426-427.) (2) Such evidence may be used if its connection with the illegal arrest has " 'become so attenuated as to dissipate the taint.' " (P. 428.) ▇ (3) The degree of attenuation which will suffice to remove the taint of illegality "requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.' Consent by the defendant, if 'sufficiently an act of free will to purge the primary taint of the unlawful [arrest]' [citation] may produce the requisite degree of 'attenuation.' " (P. 428.) (4) Although advisement of rights "may be a factor showing an intervening act of free will [citation], it does not in isolation demonstrate as a matter of law the requisite attenuation." (P. 430.)

In *People* v. *Johnson,* 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865], the court held that a defendant's confession was inadmissible as a "fruit of the poisonous tree" where it was secured by use of a codefendant's confession which in turn was the product of an unlawful search and seizure. The court held that the *Miranda* warnings in isolation were insufficient to establish the requisite degree of "attenuation" to eliminate the taint of illegality.

▇ Where the evidence discloses an exploitation of an illegal detention to obtain evidence utilized at the trial, the burden is on the People to show that the connection between the unlawful official conduct and the challenged evidence "has 'become so attenuated as to dissipate the taint.' " (*People* v. *Sesslin, supra,* 68 Cal.2d 418, 428. See *People* v. *Superior Court,* 71 Cal.2d 265, 274 [78 Cal.Rptr. 210, 455 P.2d 146].) ▇ In the instant case there was no conflict in the evidence relating to the arrest or the circumstances under which the confession was obtained. The uncontradicted evidence discloses that the confession was obtained as a direct result of the exploitation of the invalid arrest. There was no break in the causal chain linking the illegal arrest to the confession. ▇ Trial counsel properly preserved defendant's right to raise the issue on appeal by a specific objection to the introduction of any statements made by defendant on the ground that there was no probable cause to arrest and that "[I]f the

arrest is not legal, then any statement would be a product of the illegal arrest under the fruit of the poisonous tree doctrine."[2]

▮ The introduction into evidence of an unconstitutionally obtained confession compels reversal regardless of other evidence of guilt. (*People* v. *Powell,* 67 Cal.2d 32, 51-52 [59 Cal.Rptr. 817, 429 P.2d 137].)

Judgment reversed.

Kerrigan, Acting P. J., and Hilliard, J. pro tem.,* concurred.

---

[2]In fairness to the trial judge, it is noted that both *People* v. *Sesslin,* 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321], and *People* v. *Johnson,* 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865], were decided after the trial of the instant case.

*Assigned by the Chairman of the Judicial Council.