[Crim. No. 31814. Second Dist., Div. One. Oct. 11, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHN ALTON PARKER, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Alan Eakin and John L. Ryan, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**LILLIE, Acting P. J.**—The People appeal from an order of dismissal entered after the trial court granted defendant's motion to suppress evidence pursuant to section 1538.5, Penal Code.

Defendant moved to suppress "Items found as a result of an illegal detention, search and arrest." On the motion the following evidence was adduced. Officer Nixon was employed by the Los Angeles Unified School District as a security officer at Locke High School; while on duty he had "peace officer status" (see § 830 et seq., Pen. Code); he is a former deputy sheriff with eight years experience in law enforcement, including training in identification of marijuana cigarettes and the detection of the odor of marijuana and PCP (Phencyclidine); as a security officer he had previously detained and arrested persons for smoking marijuana on school grounds. On March 21 at lunch time Officer Nixon saw defendant in his car "on campus"; he knew defendant was not a student[1] and asked why he was there; defendant answered, to see his girl friend; Officer Nixon told him he could not be on campus without school business.

Thereafter and prior to March 24 Officer Nixon received information from officers at another school that a man matching defendant's description and having a car matching the description of defendant's car was selling narcotics to students there.

On March 24 around 2 p.m., while school was in session, Officers Nixon and Madison saw defendant standing on school grounds; he appeared to be smoking a marijuana cigarette; as they approached him they noticed an odor of burning marijuana. Defendant looked toward the officers, turned and "started fumbling as if he was hiding something inside his trousers"; they saw him put his hand in his waistband, and they believed he was hiding the marijuana cigarette; Officer Madison then noticed a bulge in defendant's waistband. The officers "detained" him

[1]Section 653g, Penal Code provides that every person who loiters about any school is a vagrant; and that "loiters" means to linger or idle about such school without a lawful purpose for being present.

and took him to the security office for further interrogation as to "possibly trespass; possibly he had other narcotics on him," and because he was not a student, there was more privacy there and they would not have to worry about students "interfering"; Officer Nixon was curious as to what defendant's business was on the campus.

Inside the office Officer Madison searched defendant for a weapon or contraband because he had observed defendant smoking what appeared to be a marijuana cigarette, his movements when he saw the officers and the bulge in his waistband; at the same time he asked defendant what he was doing on the campus, and defendant said he came to see about night school. While patting him down, Officer Madison felt an object in defendant's waistband; thinking it was a small weapon or contraband, he pulled out the object and found it to be a small bottle or vial. Officer Nixon detected a minty odor from the unopened vial and believed it was from PCP. Officer Madison held the unopened vial about 12 inches from his nose and detected a strong odor of PCP, opened it and saw therein a dark green substance; he arrested defendant and telephoned police to transport him to the station.

Officer Mulford, assigned to the "Crash Detail" of the police department which monitored schools and gangs, had training in identification of PCP, and had made previous arrests for possession thereof; PCP was a big problem in schools. He arrived in response to Officer Madison's call; he noticed an odor of PCP around the unopened bottle, opened it and saw a green substance with a very strong odor of mint; he took defendant into custody and advised him of his rights which defendant said he understood and waived. Asked whether he had more PCP, defendant replied he had PCP in his car and in his house. The officer asked whether he would take them there; defendant replied in the affirmative. They went to defendant's house and he pointed to his car; asked for permission to search the car, defendant said "Go ahead," and the officer found therein marijuana cigarettes and empty vials, and noticed a strong odor of PCP in the car.

The trial court granted the motion to suppress "as a matter of law and not as an issue of credibility" having previously found that "the issues of credibility are resolved in favor of the People's witnesses." The court stated further that Officers Nixon and Madison "had every justification for arresting [defendant] either for trespass or for smoking a marijuana cigarette. But they didn't take him into custody because he was going to be arrested. But they took him in because they wanted to find out what he

was doing on the school grounds. If they had arrested him for trespass, if they had arrested him because they thought he was smoking the marijuana cigarette and he had been under arrest, the search would have been perfectly legal. . . . But you haven't convinced me that they arrested him or contemplated arresting him."[2]

We agree with appellant that the search of defendant occurred after a valid arrest. It is apparent from the record that the security officers had probable cause to and did arrest defendant; the officers' testimony that they "detained" him did not negate the established fact that they had probable cause to and did arrest defendant; and that as a matter of law defendant was arrested. Thus, inasmuch as the trial court's ruling was predicated on the premise that defendant was not arrested, we are compelled to conclude that it erred in granting the motion.

"An arrest is taking a person into custody, in a case and in the manner authorized by law. . . ." and may be made by a peace officer. (§ 834, Pen. Code.) "An arrest is made by an actual restraint of the person, or by submission to the custody of an officer. . . ." (§ 835, Pen. Code.) ■ Thus, "[t]he essential elements of an arrest are: (1) taking a person into custody; (2) actual restraint of the person or his submission to custody. [Citations.]" (*People* v. *Hatcher,* 2 Cal.App.3d 71, 75 [82 Cal.Rptr. 323].) ■ "[C]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." (*People* v. *Arnold,* 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515].)

Custody is an objective condition, and is not solely dependent upon the subjective intent of the interrogator to arrest the suspect. (*People* v. *Herdan,* 42 Cal.App.3d 300, 306 [116 Cal.Rptr. 641].) Although the officers testified that they took defendant to and detained him in the security office for further investigation, clearly defendant was under arrest—in custody and not free to leave. Officer Nixon testified that defendant was detained and he was not free to walk away. Defendant himself pointed out the restraint in testifying " . . . [the officers] stopped me right at the door of the security office. [¶] They grabbed me in the back and just took me into the security office. . . . [¶] They told me to shut up and, you know—I asked them what was going on. They told me to shut up again." The restraint of defendant went far beyond temporary detention. The fact that the security officer testified he detained defen-

---

[2]The court also made this surprising statement: "I think he [defendant] ought to practice his trade [selling PCP] anywhere but on the school grounds."

dant[3] did not negate the fact that the officers had probable cause to arrest him and in fact did so. (*People* v. *Freund,* 48 Cal.App.3d 49, 54-55 [119 Cal.Rptr. 762]; *People* v. *Herdan,* 42 Cal.App.3d 300, 308 [116 Cal.Rptr. 641]; *Ferdin* v. *Superior Court,* 36 Cal.App.3d 774, 781 [112 Cal.Rptr. 66].)

In *People* v. *Freund,* 48 Cal.App.3d 49 [119 Cal.Rptr. 762], officers observed marijuana growing in a canyon near a house, then noticed marijuana growing in the garden and saw a man who appeared to be nervous leaving the driveway; they went into the patio area, saw defendants and asked them for identification; one officer detected an odor of marijuana coming from the house; defendants were placed in a patrol car while an officer obtained a search warrant; a search of the house under the warrant revealed marijuana then, according to the officer's testimony, defendants were placed under arrest. This court held that defendants were under arrest (as distinguished from detention) when they were taken into custody and placed in the patrol car under police guard. (P. 54.) An informant in *People* v. *Herdan,* 42 Cal.App.3d 300 [116 Cal.Rptr. 641] gave a prearranged signal that narcotics were in defendant's possession, and defendant was accosted on the street by officers one of whom identified himself and asked whether narcotics were in his car; defendant replied in the affirmative, then he was arrested. This court held that defendant was in custody at the time the officer asked him the question—that the objective indicia of arrest were present; and said at page 308, that "appellant could reasonably have believed that the indicia of arrest were present. Appellant was in the process of delivering narcotics when he was suddenly accosted by two police officers, one of whom asked him about the possible presence of narcotics in his vehicle. Appellant could reasonably believe that at that moment he was in custody, and that he was not free to leave the scene." In *Ferdin* v. *Superior Court,* 36 Cal.App.3d 774 [112 Cal.Rptr. 66], defendant was detained pending receipt of a warrant. This court said that there was probable cause to arrest him, and "The fact that the officers did not

---

[3]The record fails to show that either officer was asked when he thought he had the right to arrest defendant or what the probable cause for arrest was. (See *People* v. *Coleman,* 28 Cal.App.3d 36, 43 [104 Cal.Rptr. 363].) *Agar* v. *Superior Court,* 21 Cal.App.3d 24 [98 Cal.Rptr. 148]; *People* v. *Miller,* 7 Cal.3d 219 [101 Cal.Rptr. 860, 496 P.2d 1228] and *People* v. *Superior Court (Simon)* 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205], differ from the facts herein in that in each case the record demonstrated that the officers did not believe they had probable cause to arrest, and the theory advanced by the prosecutor below was based on facts the arresting officers did not rely upon. In the case at bench no witness said he did not believe there was probable cause to arrest defendant when he was detained and taken to the security office; moreover, the People in the superior court urged justification for the arrest on the same facts that caused the security officers in effect to arrest defendant.

actually announce to Ferdin that they were arresting him and that they did not at once bring him to the police station to be booked, but rather detained him and the other occupants, did not weaken the authority with which they were vested." (P. 781.)

 In the case at bench prior to the search of defendant in the security office,[4] the security officers both believed defendant was smoking marijuana, was in possession of narcotics and was trespassing on school property. They saw him smoking a marijuana cigarette while loitering on the school grounds in violation of section 653g, Penal Code. (*People v. Junious,* 30 Cal.App.3d 432, 436-437 [106 Cal.Rptr. 344]; *People v. Frazier,* 11 Cal.App.3d 174, 182-183 [90 Cal.Rptr. 58]; *People v. Bevins,* 6 Cal.App.3d 421, 424-426 [85 Cal.Rptr. 876].) When defendant saw the officers he turned, fumbled and made a furtive movement by placing his hand in his waistband as though hiding something. As the officers approached him one of them detected the odor of marijuana and the other saw a bulge in his waistband. The officer believed he was hiding the marijuana cigarette. At that time, as noted by the trial court, the officers had reasonable cause to arrest defendant. Officer Nixon testified that at the time they detained defendant he was not free to walk away; they took him to the security office for further interrogation.[5] When they were inside the office because he had observed defendant smoking a marijuana cigarette, smelled the odor of marijuana, and observed his furtive movement toward his waistband and then the bulge in his waistband, Officer Madison searched him for weapons or contraband.

Thus prior to the search, the objective indicia of arrest were present and defendant could reasonably believe, and did believe that he was in custody and not free to leave. The fact that the officers, who had probable cause to arrest defendant, intended to question him further before announcing his arrest did not vitiate their probable cause. (*People v. Salitter,* 55 Cal.App.3d 1046, 1049 [128 Cal.Rptr. 149].) That the officers testified that they detained defendant, did not negate the existence of probable cause and the objective indicia of arrest, or the fact of arrest. We conclude that defendant was under arrest prior to the search. Inasmuch as

---

[4]Although the trial court commented, "Neither [officer] said he was under arrest; both of them said he was being taken to the security office for questioning. *And prior to that, they searched him.*" (Italics added), the record does not support the last statement. To the contrary, it shows that defendant was not searched until *after* he was taken to the security office.

[5]Cf. *People v. Gonsoulin,* 19 Cal.App.3d 270, 274-275 [96 Cal.Rptr. 548]. Therein police requested that defendant drive his automobile to a gasoline station under police escort; and this court held that he was under arrest.

the trial court's determination that as a matter of law defendant was not under arrest when he was searched was the basis for granting the motion to suppress, the ruling and order predicated thereon must be reversed.[6]

The order dismissing the cause is reversed.

Thompson, J., and Hanson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 6, 1978.

---

[6]The trial court stated that had defendant been arrested, there was probable cause therefor, and that the search would have been lawful.