[Crim. No. 36864. Second Dist., Div. Four. Apr. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN EDWARD CAMPBELL, Defendant and Appellant.

COUNSEL

Charles B. Johnson for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, John R. Gorey and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—Appellant, together with codefendants Vernon Brooks and Pamela Miller, was charged in count I with possession of heroin for sale, in violation of Health and Safety Code section 11351, and in count II with possession of cocaine for sale, in violation of Health and Safety Code section 11351. In count III appellant was charged with possession of a sawed-off shotgun, in violation of Penal Code section 12020. Appellant pleaded not guilty.

Two motions to suppress evidence under Penal Code section 1538.5 and a motion under Penal Code section 995 were denied. Appellant's motion to traverse the search warrant was also denied. Appellant withdrew his plea of not guilty to count III and pleaded guilty thereto, whereupon the People dismissed counts I and II of the information. Appellant was placed on probation for a period of four years. Appellant appeals the denial of his motions under Penal Code sections 995 and 1538.5.

The issues presented are whether the appellant was properly detained for investigation or whether the detention constituted an arrest, and whether there was probable cause for arrest.

I

Officers Welch and Davenport testified that a surveillance was commenced on appellant's residence on Via Madera in Altadena as part of an ongoing investigation of a narcotics ring trafficking between Los Angeles, Chicago, Cleveland and Detroit.

Officer Welch testified that his investigation revealed that appellant had been the subject of two federal Drug Enforcement Administration investigations and that he had also been the subject of a previous Los Angeles Police Department investigation. The LAPD investigation was claimed to have discovered that an out-of-town narcotics dealer was picked up at the Los Angeles International Airport by appellant Campbell and taken directly to Campbell's residence within the previous month. Neither Welch nor Davenport had ever been involved in an investigation of Campbell before.

Within 30 minutes of the commencement of the surveillance, appellant left his residence and went to some property which he owned on

Ganesha Street. Codefendant Brooks came to appellant's residence and, after speaking to a lady he met there, he drove to 850 Orange Grove, followed by Officer Davenport. He picked up several articles at this address and then drove about the town, up and down side streets, making numerous U-turns, stopping, backing up, and finally arriving at the Ganesha Street property. Officer Davenport testified that Brooks drove in the manner of someone trying to "detect a surveillance."

Brooks walked empty handed into the residence at Ganesha, came out, looked up and down the street and then left a few minutes later carrying a brown paper bag which he repeatedly secreted from passersby. Appellant was with him. Each man got into his own car and drove to appellant's residence on Via Madera. Brooks entered carrying the brown paper bag which he again secreted from passing motorists. A few moments later, appellant and Brooks left carrying three pieces of luggage which they placed in appellant's car. Both men got in and Brooks drove away.

Officer Davenport testified that, for the next hour and one-half, Brooks drove about as if he were again trying to detect surveillance. Officer Welch's testimony tended to corroborate the testimony of the defendants and their witnesses, to the effect that they spent sometime at a pool hall and had dinner before driving directly to the Los Angeles International Airport.

Upon arriving at the airport, Brooks and appellant separated. Officer Davenport followed Brooks. Officer Welch followed appellant, who purchased a ticket for Cleveland, checked his luggage and proceeded to the boarding area where he was stopped by Welch who identified himself as a police officer and advised appellant that he was being detained as part of a narcotics investigation. The officer had his gun drawn and appellant was told to put his hands on the wall. The officer replaced his gun in his waistband, and a pat-down search was conducted.

Officer Welch told appellant that he wanted to talk to him and inspect his luggage, and that if no narcotics were found he would be free to go. Appellant agreed. The entire conversation lasted about one minute. Officer Welch testified that he firmly believed that people involved in narcotics trafficking had weapons; he knew that people involved in this investigation had been killed.

Appellant was handcuffed and told by the officer, this is for your safety and mine. "I don't think there is going to be any problem, and I'm not going to embarrass you. I'll just handcuff you in front of you, and I'll put your jacket in front of you [*sic*] your handcuffs." The appellant is said to have responded, "That's fine with me." Officer Welch contends that he did not regard appellant as under arrest, and that he did not use the term arrest in his statements to the appellant. There was one other officer with Welch at that time.

When asked if he had any luggage, appellant said no. He also said that his wife had dropped him off at the airport and that he was traveling alone.

The officers walked appellant over to the baggage area where they met Officer Davenport who had defendant Brooks handcuffed. The luggage was retrieved and all parties were taken to the office maintained at the airport by the narcotics division. Officer Welch testified that defendants were taken there rather than to the Los Angeles Police Department's substation because they were not under arrest. The substation was a part of the same building, however, located in the middle of the airport within five minutes' walking distance of the luggage section.

Upon arriving at the office, Officer Welch told appellant that he would like to search the luggage for narcotics or contraband, but that appellant did not have to allow the search. He explained that the alternative was that he would contact a judge and attempt to get a search warrant. Appellant gave permission for the one suitcase which he had checked to be searched, and the search revealed only personal effects. Officer Welch then told appellant, "[A]s soon as we were done with Mr. Brooks I'd get them both back to the airport, if Mr. Brooks didn't have any narcotics." Appellant was then taken to a holding tank in the substation, where he could "sit there and smoke, you know, whatever he wanted to do, ..."

Officer Welch testified that Brooks consented to a search of his luggage and provided him with the keys. Six ounces of cocaine and a kilo of heroin were found. Vernon Brooks testified that he was told he was under arrest at the time that he was first stopped and that the keys to the luggage were seized in the pat-down search. He denied that he ever consented to the search.

After Brooks and appellant had been placed under arrest, appellant consented to a search of his residence where a sawed-off shotgun was found.

## II

■ Appellant argues that all of the indicia of arrest were present in this case, that the action of the officers in approaching the suspect with drawn guns, conducting a pat-down search, handcuffing him and transporting him to the office of narcotic administration and ultimately a holding tank cannot be justified as necessary to a reasonable detention in the investigation of a narcotics case.

The trial court found that a special exigency exists at airports, that the situation is substantially different from a detention which occurs at a residence or a residential street, and "that despite the appearance of the actions as being too precipitous, that is drawing guns and searching at the point of detention, initially, the court is of the view that under the circumstances then existing ... the original detention was a detention, despite appearances, ..."

■ Where, as here, an officer approaches an individual believing that that person may be involved in criminal activity, that contact is subject to the rules of detention. In holding that certain activity rises to the level of "detention," the court is merely concluding that the activity is subject to legal scrutiny in light of the Fourth Amendment's command of reasonableness. (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957].)

■ The question here is whether the degree of restraint employed exceeded reasonable restraint to detain and escalated into an arrest, contrary to the finding of the trial court; and if so, was there probable cause to arrest. ■ An arrest requires probable cause to believe a specific crime has been committed. A detention requires a lesser showing of probable cause to believe nonspecific criminal activity is afoot. (*In re Tony C., supra,* 21 Cal.3d at p. 892.)

■ The one consistency throughout all of the cases discussing this subject is that each of these cases must be decided on its own facts. It is therefore necessary to examine each element of this occurrence to determine its reasonableness.

Officer Welch first approached appellant with a drawn gun and proceeded to conduct a pat-down search. An officer is justified in making a pat-down search if he has objective cause to believe that the suspect is armed or that the search is necessary for the officer's own safety. (*People* v. *Thomas* (1971) 16 Cal.App.3d 231, 234 [93 Cal.Rptr. 877].) Officer Welch articulated his belief that the appellant was armed and justified this belief by testifying that there had been killings in connection with this investigation. This statement was neither objected to nor rebutted. The argument that appellant had been through a metal detector and therefore the officer's fear for his safety was unjustified, is fallacious. The appellant cannot substantiate his contention that "the officer knew he had no weapons." As noted by the respondent, there has been no showing that metal detectors are foolproof, and the armed highjackings of aircraft tend to belie this contention.

The officer's concern for his safety also justified his approaching the appellant with a drawn weapon. Officer Welch had reason to believe that appellant was a member of a ring trafficking in large quantities of narcotics. He was warranted in approaching the appellant with caution. When appellant did not react violently to being accosted, Officer Welch immediately replaced his gun in his belt before patting down the appellant. This conduct did not constitute restraint beyond that which is necessary for temporary detention.

Next, Officer Welch asked appellant how he had gotten to the airport, and appellant responded that his wife had brought him. He also asked him if he was traveling alone, and appellant responded that he was. Officer Welch knew that appellant had been driven to the airport by Brooks and that they were traveling together, each of them having taken luggage from the trunk of appellant's car.

Officer Welch then asked appellant if he would accompany him to where appellant's luggage was located so that they could continue the investigation. The officer stated that he did not think there was going to be any trouble, but that he was going to handcuff the appellant "for your safety and mine." The appellant is said to have acquiesced to this procedure.

Respondent argues that the handcuffing of appellant and removing him to another area for search was not the functional equivalent of an arrest. We disagree. Even if the police do not formally arrest a suspect, that suspect may nevertheless be under actual arrest if the

restraint employed by the police goes beyond that which is reasonably necessary for a detention. (*People* v. *Parker* (1978) 85 Cal.App.3d 439, 443 [148 Cal.Rptr. 513]; *People* v. *Hatcher* (1969) 2 Cal.App.3d 71 [82 Cal.Rptr. 323].)

In *People* v. *Courtney* (1970) 11 Cal.App.3d 1185, 1192 [90 Cal.Rptr. 370], the court discussed its disinclination to hold that every transportation of a suspect to another location constitutes arrest. In the *Courtney* case the police removed a suspect from a crowd of hostile students to the campus police department for interrogation. The court said that the choice was between on-spot interrogation at the expense of the officers' safety or abandoning the investigation. "We recognize that it is only in a rare case where, absent probable cause for arrest, the removal of a suspect to a police station for further investigation is constitutionally permissible." (See also *People* v. *Harris* (1975) 15 Cal.3d 384 [124 Cal.Rptr. 536, 540 P.2d 632].) Surely, it is a greater intrusion to handcuff a suspect before removing him to another location for further investigation, and this degree of restraint must be justified.

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 24 [20 L.Ed.2d 889, 908, 88 S.Ct. 1868].)

There has been no showing that Officer Welch was in any danger or believed himself to be in any danger after he had established that the appellant was unarmed. Further, Officer Welch had the support of a second officer.

We have shoved many an analysis through the eye of a needle, but we cannot cope with the enormity of the incongruity urged by respondent in saying that a person who is handcuffed and asked to accompany an officer, freely consents to do so. Nor can we conceptualize that a person in this position believes that he or she is free to leave the area of detention. The act of handcuffing unequivocally manifests police restraint regardless of the suspect's supposed consent to the procedure. "An arrest is made by an actual restraint of the person, or by submission to the custody of an officer...." (Pen. Code, § 835.)

The conduct of the officer exceeded a reasonable detention under the circumstances in that there was not an increasing degree of justification for the increasing degree of intrusion. We conclude therefore that appellant was under arrest prior to the search, and we next examine whether there was probable cause to arrest.

■ Custody is an objective condition and is not solely dependent upon the subjective intent of the officer to arrest the suspect. "The fact that the officers, who had probable cause to arrest defendant, intended to question him further before announcing his arrest did not vitiate their probable cause. (*People* v. *Salitter* (1976) 55 Cal.App.3d 1046 [128 Cal.Rptr. 149].) That the officers testified that they detained defendant did not negate the existence of probable cause and the objective indicia of arrest, or the fact of arrest." (*People* v. *Parker, supra,* 85 Cal.App.3d 439, 445.)

■ Appellant's contention that his conduct might be susceptible of an innocent explanation is not supported in light of the totality of the circumstances presented here. "'The succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one.'" (*United States* v. *Belle* (3d Cir. 1979) 593 F.2d 487, 498.)

The officers conducting this investigation had years of experience in narcotic investigation and testified to the significance of the conduct of the defendants as conforming to the pattern of those persons engaged in narcotic traffic. Appellant owned several residences in the area which Officer Davenport categorized as "drops." All of the automobiles being used by the various suspects were owned by the appellant. The "furtive conduct," the efforts to "detect surveillance," the attempt at the airport to avoid the appearance of traveling together, the deliberately misleading statements made to the officer at the airport, the past association with a known narcotic figure, and the purchase of tickets for a destination known to be one of the cities utilized by this particular ring of narcotic suspects, cumulatively constituted a basis for reasonably believing that these defendants were presently engaged in the trafficking of narcotics and were probably part of the narcotics ring under investigation.

Thus, there was probable cause to detain and to arrest the appellant, and the consent to search the house on Via Madera which followed was therefore valid.

The judgment is affirmed.

Kingsley, Acting P. J., and Early, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.