[No. A101106. First Dist., Div. Five. Oct. 29, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
AARON D. NICHOLSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

† Pursuant to California Rules of Court, rules 976(b) and 976.1, parts III. and IV. of this opinion are not certified for publication.

## COUNSEL

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Margo J. Yu, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SIMONS, J.—Numerous Penal Code provisions punish those who successfully frustrate an effort to arrest them.[1] Alone among these, the escape statute, section 4532, requires that the defendant be a "prisoner" at the time he or she flees "lawful custody." In this case, officers lost control over appellant while arresting him, and he fled the scene. In the published portion of this opinion, we address the nature of the crime appellant committed when he fled and conclude that his flight constituted an escape, but only because appellant was a parolee in lawful custody for a parole violation. We also conclude that the court's instructions defining "escape" and "lawful custody" were deficient, but the errors were nonprejudicial. In the unpublished portion of the opinion, we reject appellant's other claims of error.

### BACKGROUND

In July 1997, appellant was released from prison on parole following his conviction for attempted murder. On July 21, 1998, parole agent Stephen Armstrong was the "officer of the day" in the Redwood City Parole Office. Based on a telephone call he received that day, Armstrong determined that appellant had violated his parole and recommended to supervising agent Dennis Tozier that a warrant for appellant's arrest be requested from the

---

[1] All undesignated section references are to the Penal Code.

Section 69, felony resisting an executive officer in the performance of duties, is violated when a person attempts, by means of force or violence, to deter or prevent an executive officer from performing any duty imposed upon that officer by law, or knowingly resists, by use of force or violence, an officer in the performance of his or her duty. Section 148, subdivision (a)(1), a misdemeanor, is violated when a person willfully resists, delays or obstructs any police officer in the discharge or attempt to discharge that officer's duty. Section 243, subdivision (b), a felony, is violated when a person assaults a peace officer who is actually engaged in the performance of his or her duties. Section 834a prohibits a person's forcible resistance to arrest. (See *People v. Diaz* (1978) 22 Cal.3d 712, 717 [150 Cal.Rptr. 471, 586 P.2d 952]; *In re Culver* (1968) 69 Cal.2d 898, 905 [73 Cal.Rptr. 393, 447 P.2d 633]; *People v. Cuevas* (1971) 16 Cal.App.3d 245, 251 [93 Cal.Rptr. 916]; *People v. Redmond* (1966) 246 Cal.App.2d 852, 862–863 [55 Cal.Rptr. 195].)

Board of Prison Terms. The warrant for appellant's arrest issued that day. According to Tozier, once a warrant issues for a parolee, his parole status is suspended and, while he is at large, he is considered a "fugitive wanted."

On July 30, 1998, appellant arrived at the parole office for his regularly scheduled appointment. Armstrong intended to arrest him and had enlisted the assistance of four other parole agents. Armstrong met appellant in the waiting room, told appellant he had to test him for narcotics, and escorted him down a hallway to the location where the agents planned to effect the arrest. Once at the designated location, Armstrong told appellant that he was under arrest and directed him to put his hands against the wall. Appellant was verbally abusive and asked why he was being arrested. The agents then put appellant up against the wall and Armstrong and Tozier tried to grab his wrist and handcuff him. Armstrong noticed that appellant's arms were covered with a Vaseline-like substance so Armstrong and Tozier could not grab him. Armstrong then requested help from the other agents. While Armstrong held appellant's arm, parole agent Jeffrey Gates attempted to handcuff him. Appellant flailed his arms to avoid being handcuffed, causing Armstrong and Gates to fall. Appellant then bolted out the back door, with Gates and Armstrong in pursuit.

Less than half an hour later, appellant called the parole office and spoke to parole agent Irma Vargas. When appellant asked why he was being arrested Vargas told him he was under investigation and needed to turn himself in. Appellant became "really upset," and said loudly, "Listen carefully because I'm only going to say this once. . . . My name is Aaron Nicholson." "Watch your back. I'm gonna shoot up the agents. I'm gonna blow up the parole office. I'm going to shoot up the office. Watch your back. It's on. . . . Don't fuck with me you mother fuckers." Appellant's threats caused Vargas to feel "uncomfortable" because she believed he could "do something" since he had escaped. Vargas told Jennifer Ashik, the parole office's office assistant, about appellant's threats and said she felt that he was threatening the lives of her family as well as the parole agents. Vargas felt cautious when she left the parole office and was more aware of her surroundings because of appellant's threats. After hearing appellant's threats on the speakerphone, parole agent Veronica Sepulveda felt frightened and left for the day. Vargas told Tozier that appellant had made generalized threats against the parole agents and nothing specific about any agent.

Armstrong testified that Vargas told him of appellant's threats against the parole office. Armstrong said he "thought she told [him] that [he] was specifically named in those threats," but had "no independent recollection of that" at the time of trial. On cross-examination, Armstrong said he believed he was a subject of appellant's threats because he was the agent who obtained

the warrant for appellant's arrest, brought appellant from the parole office reception area to the arrest site, and, with others, attempted to arrest appellant. Due to appellant's criminal history, Armstrong believed appellant's threats, was concerned for himself and his family, and contacted his local police department for protection. The California Highway Patrol (CHP) and Redwood City Police Department were also notified of appellant's threats.

The next evening, the police went to a Palo Alto shopping center to arrest appellant, based on information that he would be there. Police Officer Bertrand Millikin observed appellant's car and followed it onto the freeway. After appellant swerved and accelerated to a high speed to evade him, Millikin activated his lights and siren, and he and other officers gave chase. Eventually, appellant stopped his car on the shoulder, scaled a fence and fled on foot. A search of appellant's car turned up a loaded .32-caliber handgun and 43 extra handgun cartridges.

Appellant was arrested on October 28, 1998. The following day he was interviewed by CHP Officer Lorraine Kempf after being advised of and waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]). Appellant told Kempf that on July 30 he appeared for an appointment at the parole office. While he was being escorted down the hallway for what he believed was a urine test, numerous officers approached him and his arm was painfully bent back in an attempt to handcuff him. Appellant said he broke free and fled. He then called the parole office to find out why they had attempted to arrest him and said, "Give me the officer of the day, or I'll come down there and beat your ass." He also said he had been shot during the pursuit. Kempf said that appellant expressly referred to Armstrong when he said, "He better watch his back. I'll beat his ass."

Appellant was convicted by jury trial of two counts of misdemeanor resisting arrest (§ 148, subd. (a)); one count of making criminal threats to Armstrong (§ 422); and escape without force or violence (§ 4532, subd. (b)(1)) (hereafter section 4532(b)(1)).[2] The jury also found true seven prior strike convictions (§ 1170.12, subd. (c)(2)) and three prior prison terms (§ 667.5, subd. (b)). He was sentenced to 28 years to life in state prison and timely filed this appeal. He contends his convictions for escape and making criminal threats are not supported by substantial evidence and the court committed instructional error. We affirm.

---

[2] He was acquitted of one count of making criminal threats.

DISCUSSION

I. *Substantial Evidence Supports Appellant's Escape Conviction*

Appellant contends that his escape conviction rests on insufficient evidence and urges us to reverse. Though appellant frames his argument as a challenge to the sufficiency of the evidence, its resolution depends primarily on our interpretation of the escape statute.

A. *Definition of Prisoner*

Section 4532(b)(1) provides: "Every *prisoner* arrested and booked for, charged with, or convicted of a felony, . . . who is confined in any county or city jail [or] prison, . . . or . . . is in the lawful custody of any officer or person, . . . who escapes or attempts to escape from a county or city jail [or] prison . . . or from the custody of any officer or person in whose lawful custody he or she is, . . . is guilty of a felony . . . ." (Italics added.)

Appellant argues that because he fled prior to being booked, *People v. Diaz, supra,* 22 Cal.3d 712 compels a reversal here. In *Diaz,* James Evans eluded police officers attempting to arrest him on a felony warrant. The evidence clearly established that the defendant, Diaz, had aided and abetted Evans's flight, and the Supreme Court had to determine whether that flight constituted an escape under section 4532, subdivision (b). (*Diaz,* at p. 714.) The court concluded that this statute, which is limited to prisoners who flee lawful custody, did not apply to Evans's flight: The use of the term "prisoner" was intended to restrict application of the provision to "those incarcerated in prison or 'to prisoners incarcerated in facilities other than prisons who might be temporarily in custody outside the walls of a custodial facility . . . .' [Citation.] . . . '[T]he statute does not apply until an arrestee has been booked preparatory to incarceration in a jail or other place of confinement *and thereby becomes a prisoner within its meaning.*' [Citations.]" (*Diaz,* at p. 715, citing & quoting *In re Culver, supra,* 69 Cal.2d at pp. 900, 901, 904 [Despite literal wording of escape statute, that statute does not apply to every arrestee fleeing an arresting officer.].)

*Diaz* focused on how early in the arrest-incarceration process a person is subject to section 4532 and held that, prior to booking, an arrestee is not a prisoner for purposes of that section. (*People v. Diaz, supra,* 22 Cal.3d at p. 715.) Our case presents a different question, albeit one that is informed by the *Diaz* analysis: Does a convicted felon on parole *remain* a prisoner even after his release from actual incarceration? *Diaz* found a requirement of incarceration implicit in the term "prisoner" and concluded that this requirement could be satisfied in three distinct circumstances: "a person who has

been booked, incarcerated at the time of his escape, or previously so incarcerated and temporarily in custody outside the confinement facility." (*Diaz*, at p. 716.) Unlike the arrestee in *Diaz*, appellant was a parolee when he fled, dictating a different result.

█ A parolee, though no longer actually incarcerated in a state institution, is constructively a prisoner under the control of the correctional authorities. (*People v. Lewis* (1999) 74 Cal.App.4th 662, 669–670 [88 Cal.Rptr.2d 231]; *People v. Denne* (1956) 141 Cal.App.2d 499, 507, 509 [297 P.2d 451].) Section 3056 provides: "Prisoners on parole shall remain under the legal custody of the [Department of Corrections] and shall be subject at any time to be taken back within the enclosure of the prison." "The granting of parole does not change [the parolee's] status as a prisoner. The parolee is not discharged but merely serves the remainder of his sentence outside rather than within the prison walls. . . . But he continues at all times to *remain in penal custody* . . . ." (*Denne*, at p. 508, italics added.) Because a parolee constitutes a calculated risk to the safety and security of the community, his breach of the faith reposed in him may result in his summary return to prison, and, therefore, he requires his close supervision by his parole officer. (*Id.* at p. 509.) "[B]y virtue of the parolee's status as one who remains *in custodia legis* of correctional authorities, 'standard concepts of arrest and probable cause have little relevance,' and a parolee's 'apprehension, although outwardly resembling arrest,' is simply a return from constructive to actual custody, regardless of whether the apprehension is effected by police or parole officers. [Citations.]" (*Lewis*, at p. 670.) █ The parole authority may suspend or revoke any parole for cause, and order the parolee returned to prison, and its written order is a sufficient warrant for any peace or prison officer to return the parolee to actual custody. (§§ 3060, 3063.) As a parolee, appellant was constructively a prisoner under section 4532(b)(1).

*People v. Cisneros* (1986) 179 Cal.App.3d 117 [224 Cal.Rptr. 452] supports this conclusion. In *Cisneros*, the defendant was arrested for a probation violation and fled before the booking process was completed. (*Id.* at p. 119.) The defendant argued that, under *Diaz*, he was not a "prisoner" because he had not been "arrested and booked" before fleeing. The court rejected this argument and held that, as a probationer, the defendant was already "in a state of constructive incarceration," and "was, thus, a 'prisoner' within the meaning of section 4532, since he was a prisoner who had already been convicted of burglary . . . ." (*Cisneros*, at p. 120.) *Diaz* clarified that booking is only one of three distinct circumstances that qualify a person as a prisoner under section 4532. (*People v. Diaz, supra,* 22 Cal.3d at p. 716.) *Cisneros* held that, "a probationer in the constructive custody of the court" constitutes a person "incarcerated at the time of [his or her] escape." (*Cisneros*, at p. 123.)

Appellant claims, however, that in *Diaz* our Supreme Court implicitly rejected the "constructive incarceration" doctrine when it disapproved of *People v. Handley* (1970) 11 Cal.App.3d 277 [89 Cal.Rptr. 656]. (*People v. Diaz, supra,* 22 Cal.3d at p. 716.) This argument rests on the mistaken premise that *Handley* approved that doctrine. In *Handley,* the defendant, who had pled guilty to two misdemeanors and was at liberty on bail, was present in court for imposition of sentence. The record was silent as to whether he had been arrested, booked or jailed before bail was fixed. (*Handley,* at pp. 279–280.) After orally imposing sentence, the court told the defendant he was "in custody" and directed him to "sit down" in an area reserved for persons in custody. The defendant responded by fleeing the courtroom. (*Id.* at p. 279.) Because of the trial court's direction to the defendant, the Court of Appeal held that the defendant was a prisoner pursuant to section 4532. *Handley* expressly rejected an interpretation of section 4532 that required incarceration (*Handley,* at p. 282), and *Diaz* simply disapproved of this determination (*Diaz,* at pp. 716–717).

Appellant also contends that *People v. Armenta* (1970) 11 Cal.App.3d 601 [89 Cal.Rptr. 886] compels a different result. *Armenta,* in fact, supports the conclusion we reach. In that case the court considered "whether a parolee arrested by a parole agent for suspected violation of parole is guilty of a violation of [section 4532, subdivision (b)] if at that moment he escapes from detention." (*Armenta,* at p. 603.) It determined: "The statute . . . requires more than that a person who has been convicted of a felony thereafter escape from a person who has his lawful custody. . . . Obviously the custody must be related to the felony of which the person charged with escape has been convicted. [¶] Here, [Armenta's] parole status did derive from the burglary of which he had been convicted. However, while such arrests of parolees have been described as a taking into actual custody of those who have been in constructive custody [citation], his arrest by [his parole officer] had not the effect of terminating his parole; nor was [his parole officer] at the time he made the arrest certain that [Armenta] did not have permission to be where he was, because [the parole officer] later made inquiry as to whether [Armenta] had such permission. [¶] . . . [¶] The situation would have been different had [Armenta] escaped from the parole officer after a revocation of parole. [Armenta] then would have been in custody as a prisoner in the process of being returned to prison for the felony he had committed. In the actual situation [the parole officer] was not in the course of returning [Armenta] to prison but intended to place him in local detention pending action by the Adult Authority." (*Id.* at pp. 604–605.)

■ *Armenta* recognizes that a parolee is constructively incarcerated and that taking him into lawful custody for a warrant issued following suspension of his parole converts that constructive incarceration into actual incarceration. Therefore, if appellant fled only after he was in lawful custody, he would be guilty of violating section 4532. We next consider whether substantial evidence was presented that appellant was in lawful custody when he evaded the effort to arrest him.

### B. *Definition of Lawful Custody*

■ To constitute an escape, a prisoner must flee "from the custody of any officer or person in whose lawful custody he or she is." (§ 4532(b)(1).) "Lawful custody" is not defined within the statute. However, where the language of a statute uses terms that have been judicially construed, we presume that the terms have been used in the precise and technical sense already placed upon them by the courts. (*People v. Lawrence* (2000) 24 Cal.4th 219, 231 [99 Cal.Rptr.2d 570, 6 P.3d 228].)

■ "In custody" implies that a person "is detained or kept in the charge or control of another, in some sort of restraint," so that the person "is not free to come and go" at will. (*People v. Drake* (1912) 162 Cal. 248, 249 [121 P. 1006].) Stated otherwise, " '[C]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived.' [Citation.]" (*People v. Parker* (1978) 85 Cal.App.3d 439, 443 [148 Cal.Rptr. 513].) Lawful custody is the imposition of such restraint or confinement under color or authority of law. (*In re Estrada* (1965) 63 Cal.2d 740, 749 [48 Cal.Rptr. 172, 408 P.2d 948].)

When appellant voluntarily appeared at the parole office, the parole agents were authorized by the arrest warrant previously issued to transfer appellant from constructive to actual custody. (§ 3060.) By informing appellant that he was under arrest, ordering him to put his hands up against the wall, putting and holding him up against the wall, and grabbing his arm, Armstrong imposed sufficient restraint or confinement under color of law to constitute lawful custody.

Appellant relies on *Cisneros* to argue that he was never in the actual custody of the parole agents because he fled before the attempt to arrest him was completed. We disagree. In *Cisneros,* the defendant, unlike appellant, had

actually been arrested before he fled. However, there was substantial evidence that at the time of appellant's flight he was being restrained by the officers such that he was physically deprived of his freedom of action in a significant way, and, as a reasonable person, should have known that.

## II. *Instructional Error*

### A. *The Escape Instruction*

Appellant next contends the court erroneously instructed the jury on escape.

The court instructed with the following modified version of CALJIC No. 7.30: "The crime of escape without force or violence, a violation of section 4532(b)(1) . . . is lesser to that of escape with force or violence charged in count five. [¶] Every prisoner convicted of a felony who is under the lawful custody of any officer, who escapes from the lawful custody of that officer, is guilty of the crime of escape without force or violence in violation of . . . section 4532(b)(1). [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person was convicted of a felony, [¶] 2. That person was under the lawful custody of an officer, and [¶] 3. That person escaped from the lawful custody of such officer."

This instruction was incomplete and therefore erroneous because it failed to define the term "prisoner" in this constructive incarceration case. As we noted, *ante*, appellant was a prisoner under section 4532 because, as a parolee, he was constructively incarcerated on a felony and was then taken into lawful custody as a result of the suspension of the parole imposed in connection with that felony. The instruction given here could have been reasonably interpreted to require the conviction of any ex-felon who fled the lawful custody of an officer during arrest, regardless of whether the ex-felon was then a prisoner as defined by *Diaz* and regardless of whether the custody related to the previous felony conviction.

█ A jury instruction that omits an element of an offense requires reversal unless the error was harmless beyond a reasonable doubt. (*People v. Flood* (1998) 18 Cal.4th 470, 503 [76 Cal.Rptr.2d 180, 957 P.2d 869].) However, if no rational jury could have found the missing element unproven, the error is harmless beyond a reasonable doubt. (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 416 [124 Cal.Rptr.2d 92].)

■ We conclude the error is harmless beyond a reasonable doubt. The undisputed evidence established appellant was a parolee subject to an arrest warrant for violating his parole at the time of the attempt to arrest him on that warrant. Based on the record before us, we conclude that had the instruction properly set out all elements of the offense, no rational jury could have found that appellant was not a prisoner at the time he was taken into custody.

### B. *The Lawful Custody Instruction*

Next, appellant contends that the court's special instruction defining "lawful custody" for purposes of section 4532 was erroneous.

Over appellant's objection, the court provided the following instruction requested by the prosecutor: "A person is 'lawfully arrested' or in the 'lawful custody' of a peace officer when that peace officer attempts to arrest the person based upon an outstanding warrant for that person's arrest." We agree with appellant that the instruction is inadequate. It states expressly that a lawful arrest is the equivalent of an attempt to arrest, which is, at least, confusing. Further, it fails to define lawful custody in terms of the extent to which appellant's freedom of action had been restricted. As we stated previously, lawful custody is the imposition of restraint or confinement under color or authority of law by which the person is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived. (*People v. Parker, supra,* 85 Cal.App.3d at p. 443; *In re Estrada, supra,* 63 Cal.2d at p. 749.)

The court defined lawful custody as an attempt to arrest a person based upon an arrest warrant. This definition is far too broad. For example, in the instant case, Millikin's freeway pursuit of appellant fits literally within its terms, but we believe that *pursuit* does not constitute a *restraint* sufficient to be labeled "lawful custody."

■ Once again, we find the error harmless. (*People v. Flood, supra,* 18 Cal.4th at p. 503; *People v. Ortiz, supra,* 101 Cal.App.4th at p. 416.) The undisputed evidence, including appellant's post-*Miranda* statement, establishes that appellant was informed he was under arrest, ordered to put his hands against the wall, and physically restrained by parole agents who attempted to handcuff him before he broke free and fled. Based on this undisputed evidence, no rational jury could have found that appellant was not in the lawful custody of the parole officers at the time of his escape.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Jones, P. J., and Gemello, J., concurred.

A petition for a rehearing was denied November 19, 2004, and appellant's petition for review by the Supreme Court was denied February 2, 2005.

---

*See footnote, *ante*, page 823.