Filed 1/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F073982 |
| Plaintiff and Respondent, | (Super. Ct. Nos. BF162485A, BF157341B) |
| v. | |
| MOONSHADOW NAOMI TAGGART, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Lorna H. Brumfield, Judge.

Elizabeth J. Smutz, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE DISSENTING OPINION**

Appellant Moonshadow Naomi Taggart was convicted of felony escape (Pen. Code, § 4532, subd. (b)(1))[1] for leaving Kern County without permission while she was on "sheriff's parole." She challenges the sufficiency of the evidence to support her conviction, arguing her conduct did not constitute an escape within the meaning of the statute. We agree and conclude the conviction must be reversed.

**FACTUAL AND PROCEDURAL BACKGROUND**

The material facts are undisputed. In December 2014, in Kern County case No. BF157341B, Taggart entered a plea to buying or receiving a stolen vehicle (§ 496d, subd. (a)), and admitted two prison priors (§ 667.5, subd. (b)). Taggart was sentenced to two years in county jail pursuant to section 1170, subdivision (h), with a scheduled release date of October 30, 2015. However, in early April 2015, Taggart was released to an alternative custody program colloquially referred to as "sheriff's parole."[2]

As a term of her parole, Taggart was ordered not to leave Kern County without permission of the county Board of Parole Commissioners. At no time did she have such

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

[2] Section 3081, subdivision (b) permits county boards of parole commissioners to release to parole prisoners sentenced within their counties "upon those conditions and under those rules and regulations as may seem fit and proper for his or her rehabilitation." (§ 3081, subd. (b); see § 3077.) No party refers us to rules or regulations governing the Kern County sheriff's parole program, and the program's terms are not in the record.

A heavily redacted order granting Taggart's parole was admitted into evidence. The unredacted portions of the order provide only that Taggart was subject to unspecified rules and regulations of the Board of Parole Commissioners, was not to leave the county without the Board's permission, was to pay a monthly supervision fee, and was to attend outpatient drug counseling. During argument on motions in limine, Taggart's counsel described the redacted portions of the order as including conditions regarding "seeking employment, shall not loiter, or consort with lewd or disorderly people, shall not drink liquor, shall not commit unlawful acts contrary to good morals, would lose good work time, must keep employer informed as to their whereabouts, prisoner is ordered to report each month and shall be subject to testing .…"

2.

permission. On June 26, 2015, a "retake/arrest" warrant was issued for her arrest and, soon after, she was apprehended out-of-state and transported back to California without incident.

Taggart was then charged, in Kern County case No. BF162485A, with escape (§ 4532, subd. (b)(1)), with the additional allegation that she suffered four prison priors (§ 667.5, subd. (b)). The matter was tried to a jury. After the People rested, Taggart moved for acquittal based on insufficient evidence. The motion was denied.

Issues arose regarding the proper means of instructing the jury on the escape charge. The court rejected various proposed instructions and, following lengthy argument and discussion, charged the jury with CALCRIM No. 2760 as follows:

> "The defendant is charged in Count One with escape in violation of Penal Code section 4532(b)(1).
>
> "To prove that the defendant is guilty of this crime the People must prove that:
>
> "1. The defendant was a prisoner who had been convicted of a felony;
>
> "2. The defendant was in the lawful custody of an officer;
>
> "3. The defendant escaped from the custody of the officer who had lawful custody of the defendant.
>
> "Escape means the unlawful departure of a prisoner from the physical limits of her custody.
>
> "A prisoner is in the lawful custody of an officer if the officer, acting under legal authority, physically restrains or confines the prisoner so that the prisoner is significantly deprived of her freedom of movement or the prisoner reasonably believes that she is significantly deprived of her freedom of movement."

The court also charged the jury with special instructions Nos. one and two as follows:

> "Special Instruction Number One

3.

"A person on Sheriff's parole qualifies as a 'prisoner' pursuant to [P]enal Code Section 4532(b)(1). The granting of parole does not change the parolee's status as a prisoner. The parolee merely serves the remainder of the sentence outside rather than within jail walls."

"Special Instruction Number Two

"A person released on Sheriff's Parole remains in the legal custody of the releasing agency."

The jury found Taggart guilty of escape. In bifurcated proceedings, the court found true all four prison priors. At sentencing, the court struck two of the prison priors in the interests of justice. The court sentenced Taggart to an aggregate term of seven years and eight months in state prison comprised of the following: in case No. BF162485A, the trial court sentenced Taggart to three years for the escape conviction and two years for the two prison priors; in case No. BF157341B, the court resentenced Taggart to eight months (one-third of the middle term) for possession of a stolen vehicle, and two years for the two prison priors alleged in that case, to be served consecutively to the sentence in case No. BF162485A. The court also resentenced Taggart in another case, No. BF153650A, to a four-year term, to be served concurrently.

This timely appeal followed.

## DISCUSSION

Taggart challenges the sufficiency of the evidence to support her conviction for escape, arguing that section 4532, subdivision (b)(1) requires actual, rather than constructive, custody. Although framed as a challenge to the sufficiency of the evidence, resolution of this question depends primarily on our interpretation of section 4532. The scope of a statute is a question of law that we review de novo. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49; *People v. Prunty* (2015) 62 Cal.4th 59, 71.)

Our fundamental task in construing a statute is to ascertain and give effect to the intent of the Legislature. (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.) " ' "We begin by examining the statute's words, giving them a plain and commonsense meaning." ' "

4.

(*Ibid.*) " '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) When the statutory language is clear and unambiguous, we presume the Legislature meant what it said. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230-231.) Additionally, "where the language of a statute uses terms that have been judicially construed, we presume that the terms have been used in the precise and technical sense already placed upon them by the courts." (*People v. Nicholson* (2004) 123 Cal.App.4th 823, 832 (*Nicholson*).)

Section 4532, subdivision (b)(1) provides:

> "Every prisoner arrested and booked for, charged with, or convicted of a felony, and every person committed by order of the juvenile court, who is confined in any county or city jail, prison, industrial farm, or industrial road camp, is engaged on any county road or other county work, is in the lawful custody of any officer or person, or is confined pursuant to Section 4011.9, is a participant in a home detention program pursuant to Section 1203.016, 1203.017, or 1203.018 who escapes or attempts to escape from a county or city jail, prison, industrial farm, or industrial road camp or from the custody of the officer or person in charge of him or her while engaged in or going to or returning from the county work or from the custody of any officer or person in whose lawful custody he or she is, or from confinement pursuant to Section 4011.9, or from the place of confinement in a home detention program pursuant to Section 1203.016, is guilty of a felony and, if the escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for 16 months, two years, or three years, to be served consecutively, or in a county jail not exceeding one year."

The specific language argued to be applicable to Taggart is as follows: "Every prisoner … convicted of a felony … who … is in the lawful custody of any officer or person, … who escapes or attempts to escape from … the custody of any officer or person in whose lawful custody he or she is … is guilty of a felony .…" (§ 4532, subd. (b)(1).) The terms "prisoner" and "lawful custody" have been judicially construed through a series of relevant cases, which we now review.

5.

In *In re Culver*, our Supreme Court considered whether an individual who fled from an arresting officer immediately after his arrest committed an escape within the meaning of section 4532. (*In re Culver* (1968) 69 Cal.2d 898, 900 (*Culver*).) The Court reviewed the evolution of the offense of escape in California, noting that California's original escape statute, enacted in 1855, applied only to "persons convicted and sentenced to the state prison who escaped therefrom." (*Ibid.* [citing Stats. 1855, ch. 160, § 1, p. 203].) As subsequently enacted in 1872, "the Penal Code included three sections relating to escape. Sections 105 and 106 applied to escapes from state prisons, and section 107, the predecessor of section 4532, applied to escapes from all other prisons." (*Id.* at pp. 900-901.) "In 1923 section 107 was amended to include 'every prisoner charged with or convicted of a felony … who escapes … from the lawful custody of any officer.'" (*Id.* at p. 901.) According to *Culver*, the purpose of this amendment was "to extend the coverage of the section to prisoners incarcerated in facilities other than prisons or who might be temporarily in custody outside the walls of a custodial facility …." (*Ibid.*)

In 1941, section 107 was reenacted as section 4532 of the Penal Code. (*Culver, supra,* 69 Cal.2d at p. 902.) It since has been amended various times. Relevant to *Culver*, section 4532 was amended in 1961 to additionally apply to " '[e]very prisoner *arrested and booked for*, charged with, or convicted of' " a felony. (*Culver, supra,* at p. 903, italics added.) *Culver* declared that these amendments "added precision to the requirement of incarceration that is implicit in the term 'prisoner.' The character of preincarceration custody in the field may be fraught with uncertainty and may range from a temporary detention for investigation to an arrest for an undefined or ill-defined crime to an arrest for a clearly specified crime." (*Id.* at pp. 904-905.) Accordingly, *Culver* concluded, "an arrestee who has not yet been incarcerated and who may have done no more than walk away from an arresting officer should not be declared guilty of the felony of escape." (*Id.* at p. 905.)

6.

Our Supreme Court returned to the question of when an arrestee may become a "prisoner" for purposes of section 4532 in *People v. Diaz* (1978) 22 Cal.3d 712 (*Diaz*). There, the putative prisoner was charged with felony robbery and a warrant had issued for his arrest. (*Id.* at pp. 714-715.) After being informed by an officer during a traffic stop that he was under arrest, he drove off at high speed. (*Id.* at p. 714.) The Court acknowledged statutory language that defines a prisoner as one who is "arrested and booked for, *charged with*, or convicted of a felony," but reiterated that the intent of the Legislature was to "connote a person who has been booked, incarcerated at the time of his escape, or previously so incarcerated and temporarily in custody outside the confinement facility." (*Id.* at p. 716, italics added.) The *Diaz* court concluded that the words "charged with" in section 4532 "reasonably may have been intended to apply to a person who had escaped from a prison, jail or other confinement facility following the filing of formal charges, but prior to conviction." (*Diaz, supra,* at p. 716.) Accordingly, the court again concluded that an arrestee generally does not qualify as a "prisoner" within the meaning of section 4532, even when that arrest follows the filing of formal charges. (*Diaz, supra,* at pp. 716-717.)

Some Courts of Appeal have considered whether and when a parolee or probationer may be considered a "prisoner" for purposes of section 4532. In *People v. Armenta*, an officer encountered a parolee at an immigration facility and suspected he had left his county of residency and the United States. (*People v. Armenta* (1970) 11 Cal.App.3d 601, 603 (*Armenta*).) The parolee was placed under arrest and handcuffed, but "took to his heels and was at large for several hours" before being re-taken by the police. (*Ibid.*) The Fourth District Court of Appeal considered whether "a parolee arrested by a parole agent for suspected violation of parole is guilty of a violation of Penal Code section 4532, subdivision (b) if at that moment he escapes from detention." (*Ibid.*) The court noted that the defendant had been convicted of a felony and also was in lawful custody at the time that he fled. (*Id.* at p. 604.) Nonetheless, the court considered

7.

the defendant to be "in like situation with a person arrested on any felony charge who manages to escape from the arresting officer before being booked and charge[d] at the police station." (*Id.* at p. 605.) The court noted that the situation "would have been different had defendant escaped from the parole officer after a revocation of parole. Defendant then would have been in custody as a prisoner in the process of being returned to prison for the felony he had committed." (*Id.* at p. 605.) The court also explained:

> "The situation would be different also had proof been made that defendant had left the state without permission. There was no such proof, nor any evidence other than the fact that defendant was at the border-crossing station in Calexico.

> "Penal Code section 3059 is as follows: 'If any paroled prisoner shall leave the State without permission of the Adult Authority he shall be held as an escaped prisoner and arrested as such.'

> "A proved violation of its provisions would have the effect automatically of making defendant an escaped prisoner. [Citation.] The case was not tried on that theory; and no sufficient evidence is presented to support it." (*Id.* at p. 605.)

*People v. Cisneros* involved a probationer who was arrested for a violation of probation, placed in holding, and taken to booking. (*People v. Cisneros* (1986) 179 Cal.App.3d 117, 119 (*Cisneros*).) During the booking process, the probationer fled. (*Ibid.*) The First District Court of Appeal concluded that "as a probationer, when [the officer] arrested him, appellant was already in a state of constructive incarceration. He was, thus, a 'prisoner' within the meaning of section 4532, since he was a prisoner who had already been convicted of burglary; appellant's arrest for violation of his probation constituted a taking into actual custody of one who had been in constructive custody." (*Id.* at p. 120.) The court concluded that, "[a]s a probationer in the constructive custody of the court, appellant clearly falls under the second definition of a prisoner which covers persons who had been incarcerated at the time of their escape." (*Id.* at p. 123.) The *Cisneros* court did not address *Armenta*, which appears to contradict this holding.

Finally, *Nicholson* involved a parolee who was subject to a warrant for violation of his parole. (*Nicholson, supra,* 123 Cal.App.4th at pp. 826-827.) When the parolee arrived for his regularly scheduled appointment at the parole office, he was told he was under arrest. He resisted, bolted from the premises, and evaded the police. (*Id.* at p. 827.) The following day, he was observed by officers but again evaded them before eventually being apprehended on a separate occasion. (*Id.* at p. 828.) The First District Court of Appeal determined that a felon on parole remains a prisoner for purposes of section 4532. (*Nicholson, supra,* at pp. 829-830.) The *Nicholson* court attempted to harmonize its decision with *Armenta* by relying on evidence that the warrant for the defendant's arrest had the effect of "suspending" his parole, a status the *Nicholson* court apparently viewed as analogous to the revocation of parole held necessary in *Armenta*. (*Nicholson, supra,* at p. 827; see *Armenta, supra,* 11 Cal.App.3d at p. 605.)

The *Nicholson* court went on to consider whether the parolee was in "lawful custody" at the time of his alleged escape. (*Nicholson, supra,* 123 Cal.App.4th at p. 832.) The court explained:

> " 'In custody' implies that a person 'is detained or kept in the charge or control of another, in some sort of restraint,' so that the person 'is not free to come and go' at will. [Citation.] Stated otherwise, ' "[C]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." [Citation.]' [Citation.] Lawful custody is the imposition of such restraint or confinement under color or authority of law." (*Ibid.*)

The court concluded that the appellant was in lawful custody at the time he escaped, even though his arrest had not been completed, because "[b]y informing appellant that he was under arrest, ordering him to put his hands up against the wall, putting and holding him up against the wall, and grabbing his arm, [the officer] imposed sufficient restraint or confinement under color of law to constitute lawful custody." (*Ibid.*) Furthermore, the court concluded the appellant was in actual custody because "he was being restrained by

9.

the officers such that he was physically deprived of his freedom of action in a significant way ….." (*Id.* at pp. 832-833.)

From the foregoing cases, we distill the following principles. Section 4532, subdivision (b)(1) applies to the conduct of a "prisoner." Individuals do not become prisoners within the meaning of the statute upon arrest, or even upon arrest following the filing of charges. (*Culver, supra,* 69 Cal.2d at p. 905; *Diaz, supra,* 22 Cal.3d at p. 716.) Rather, the term "prisoner" applies to individuals who have been booked, who are incarcerated, or who were "previously so incarcerated and temporarily in custody outside the confinement facility." (*Diaz,* at p. 716.) Although parolees and probationers are considered to be in constructive custody and formerly may have been incarcerated, the Courts of Appeal are not in agreement regarding the conditions under which a parolee or probationer becomes a "prisoner" within the meaning of section 4532. Under the holding in *Cisneros*, a probationer is, essentially, always a prisoner because he or she is in constructive custody and therefore "incarcerated." (*Cisneros, supra,* 179 Cal.App.3d at p. 123.) *Nicholson* similarly holds that a parolee is constructively a prisoner under section 4532, although it is unclear whether this holding is limited to individuals whose parole is suspended by operation of a warrant. (*Nicholson, supra,* 123 Cal.App.4th at p. 827.) In contrast, *Armenta* holds that a parolee is not a "prisoner" unless his or her parole has been revoked or he or she has left the state without permission and may thereby be deemed an "escaped prisoner" under section 3059. (*Armenta, supra,* 11 Cal.App.3d at p. 605.)

Regardless of whether Taggart may here be found to be a prisoner, section 4532, subdivision (b)(1) applies when a prisoner escapes from "lawful custody." (§ 4532, subd. (b)(1).) *Nicholson* explains that lawful custody implies detention or some other significant restraint or deprivation of physical freedom. (*Nicholson, supra,* 123 Cal.App.4th at 832.) The constructive custody inherent in sheriff's parole involves relatively minimal physical constraint and is therefore insufficient to constitute custody

10.

under this definition.  (See *ibid.*; see also Black's Law Dict. (10th ed. 2014) [defining "escape from custody" as "[a] *detained person's* violent or nonviolent escape from law-enforcement officers or a place of temporary detention," italics added].)

The People urge us to disregard this definition and to conclude all custody, whether actual or constructive, constitutes "lawful custody" within the meaning of section 4532.  However, this broad interpretation of "lawful custody" would render other provisions of section 4532 surplusage, a result we must avoid if possible.  (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 828.)  For example, it would have been unnecessary for the Legislature to specify that a prisoner could escape from a hospital or home detention if it understood the term "lawful custody" to already encompass all forms of custody. Yet, well after the "lawful custody" language was adopted, the Legislature added hospitals and home detention to the types of custody from which escape is possible.  (Stats. 1976, ch. 1123, § 1, p. 5027 [including those who escaped while hospitalized without supervision]; Stats. 1998, ch. 258, § 1, p. 1109 [including those who escaped from home confinement].)  These amendments suggest the Legislature did not understand "lawful custody" to include all forms of custody outside of a correctional facility, and also that the Legislature knows how to bring specific forms of custody within the reach of the escape statute when it desires to do so.  (See *People v. Murphy* (2001) 25 Cal.4th 136, 159.)

We also note that, unlike parole, all other forms of custody specifically identified in section 4532, subdivision (b)(1) as the basis for an escape conviction involve confinement within a specific facility or residence: a county or city jail or prison, an industrial farm or industrial road camp (§ 4133), a county road camp (§ 4212), a hospital (§ 4011.9), or the interior premises of the prisoner's own home (§ 1203.016, subd. (b)(1)).  (§ 4532, subd. (b)(1).)  "[W]hen a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated.  [Citation.]  This canon of statutory construction,

11.

which in the law is known as *ejusdem generis*, ' "applies whether the specific words follow general words in a statute or vice versa. In either event, the general term or category is 'restricted to those things that are similar to those which are enumerated specifically.' " ' " (*People v. Arias* (2008) 45 Cal.4th 169, 180.) In construing criminal statutes, this rule is stringently applied. (*Id.* at p. 181.)

Applying this rule here, we conclude that Taggart's parole does not constitute "lawful custody" as that term is used in the statute. As described, the only physical limitation to Taggart's parole was that she remain within the county. She was not limited to a specific facility or residence. Nor was she "temporarily in custody outside the walls of a custodial facility," a circumstance the "lawful custody" provision was intended to address. (*Culver, supra,* 69 Cal.2d at p. 901.) Her parole is therefore dissimilar from the classes of custody enumerated in section 4532, subdivision (b)(1),[3] and her prosecution for escape does not comport with the statute's legislative purpose.

Significantly, the People do not cite, and we do not find, any case applying section 4532, subdivision (b)(1) to an escape from mere constructive custody.[4] To the

---

[3] The Legislature has also criminalized the offense of escape in at least three other code sections, all of which also involve specified facilities. (*People v. Rackley* (1995) 33 Cal.App.4th 1659, 1669 ["Section 4530 governs the crime of escape or attempted escape by a prisoner confined in a *state prison* and categorizes this crime as a felony. Welfare and Institutions Code section 1768.7 makes it a felony to escape or attempt to escape from the *CYA*. Finally, Welfare and Institutions Code section 871 provides that a person escaping or attempting to escape from a *county juvenile home* is guilty of a misdemeanor."]) "The primary distinction between these statutes is … the nature of the institution or detention facility in which the person is being held." (*Ibid.*) Taggart's parole involved minimal physical constraint compared to the custody specified in these escape statutes as well.

[4] Presumably, Taggart is not the first parolee to have violated the terms of her parole by leaving her county of residency without permission from the parole board. It is therefore somewhat revealing that no published opinion addresses the applicability of section 4532, subdivision (b)(1) to these circumstances. Moreover, at oral argument, the Supervising Deputy Attorney General appearing on behalf of the People stated he was

12.

contrary, *Nicholson*, on which the People primarily rely, is contrary to this proposition. There, the court concluded the defendant was in lawful custody, not because he was on parole, but because he was in the process of being transferred from constructive to actual custody, had been told he was under arrest and to put his hands up against the wall, and was physically deprived of his freedom in a significant way by being held against the wall with his arm restrained. (*Nicholson, supra,* 123 Cal.App.4th at pp. 832-833.) Indeed, if the defendant's status as a parolee was sufficient to sustain the escape charge, the court's detailed discussion of the restraints on his liberty would have been unnecessary. Thus, although the People contend that *Nicholson* stands for the proposition that "a parolee can be convicted of escape when he or she eludes the spatial restrictions imposed by a parole officer," *Nicholson* does not so hold.

We also reject the People's argument that section 4532, subdivision (b)(1) applies, by operation of section 3059,[5] to all parolees who leave the state. As a preliminary matter, section 3059 applies to individuals paroled by the Board of Prison Terms and thus is inapplicable to Taggart, who was paroled by the Kern County Board of Parole Commissioners. (See § 3040.) Nonetheless, Taggart is susceptible to section 3080, which applies to parolees under supervision by a county board of parole commissioners, and similarly provides, "If any paroled prisoner leaves the county in which he is imprisoned without permission from the board granting his parole, he shall be arrested as an escaped prisoner and held as such."

Both section 3059 and section 3080 authorize law enforcement to arrest and hold a parolee who has exceeded the boundaries of his or her constructive custody. Nothing in

_____

unaware of any prosecutions in the State of California brought under this statute and involving these circumstances.

[5] "If any paroled prisoner shall leave the state without permission of his or her supervising parole agency, he or she shall be held as an escaped prisoner and arrested as such." (§ 3059.)

13.

the plain language of either statute suggests that a parolee who leaves the county may be deemed an "escaped prisoner" for any other purpose. The provisions are "aimed at keeping the parolee available to meet with the parole officer by subjecting him or her to arrest as an escapee." (*Fleming v. State of California* (1995) 34 Cal.App.4th 1378, 1384.) They are contained within the statutory schemes describing the discretionary authority afforded to state and county parole boards. (§ 3040, et seq.; § 3074, et seq.) Neither imposes criminal penalties or suggests that a parolee so arrested is necessarily subject to prosecution pursuant to section 4532, subdivision (b)(1).

Significantly, the language of section 3059 has remained virtually unchanged since at least 1893, when it was included in an act establishing the Board of Parole Commissioners. (Stats. 1893, ch. CLIII, § 1, p. 183.) This original provision stated that a written order of the board "shall be a sufficient warrant" to authorize the return of a paroled prisoner to actual custody. (*Ibid.*) However, "[i]f any prisoner so paroled shall leave the State without permission from said Board, he shall be held as an escaped prisoner, and arrested as such." (*Ibid.*) The language of section 3080 similarly has remained virtually unchanged since at least 1909, when it was included in an act for the creation of a board of parole commissioners for each county that similarly provided the written order of that board "shall be a sufficient warrant" to return the prisoner to actual custody. (Stats. 1909, ch. 452, § 1, p. 783.) However, "[i]f any prisoner so paroled shall leave the county in which he was so imprisoned without permission from the board granting his parole, he shall be held as an escaped prisoner and arrested as such." (*Ibid.*)

In both instances, it appears the language was intended to permit arrest, without a warrant or revocation order, of a parolee who left the jurisdiction. In any event, we are certain the Legislature could not have intended either of these original provisions to permit a criminal prosecution for escape based solely on a parolee's departure from the jurisdiction. This is because, at the time these early provisions were enacted, the escape statutes applied only to escapes from prison. (See *Culver, supra,* 69 Cal.2d at p. 901

14.

[discussing former sections 105 through 107].)  It was not until 1923 that section 107 (the predecessor to section 4532) was amended to apply to escape from " 'the lawful custody of any officer.' " (*Culver, supra,* 69 Cal.2d at p. 901.)

We recognize that *Armenta* cited section 3059 in its discussion of section 4532 and stated, "A proved violation of [section 3059's] provisions would have the effect automatically of making defendant an escaped prisoner." (*Armenta, supra*, 11 Cal.App.3d at p. 605.)  The import of this conclusory statement, made without any analysis, is difficult to discern.  In any event, however, *Armenta* addressed only whether the parolee in that case was a "prisoner" for purposes of section 4532.  It therefore appears that the court viewed a lawful arrest pursuant to section 3059 as sufficient to render a parolee a "prisoner." (*Armenta, supra,* at p. 605.)  With regard to escape from "lawful custody," *Armenta* makes clear that the custody at issue was that of the arresting officer, not the mere constructive custody of parole.  (*Id.* at pp. 603-604.)  As in all the cases cited by the parties, the parolee at issue did not escape until after his arrest was underway.  (*Id.* at p. 603.)

Finally, we note that, like arrest, the character of parole and parole violations "may be fraught with uncertainty." (*Culver, supra,* 69 Cal.2d at pp. 904-905.)  If the People's argument were accepted, it could be difficult to distinguish those parole violations that constitute an escape from those that do not.  For instance, the People argued below during motions in limine that Taggart's failure to call in to her parole officer as scheduled constituted an escape.  Does failure to inform an employer of one's whereabouts also constitute an escape?  Or failing to present for drug testing?  Or inadvertently crossing the street into another county and then returning?  Interpreting the "lawful custody" requirement as the People suggest, as encompassing the failure to comply with the demands of the most minimal level of supervision, would permit prosecution for escape in imprecise and ill-defined circumstances.  We instead interpret "lawful custody"

15.

according to its ordinary meaning and consistent with the structure of the statute and its legislative purpose as requiring actual physical custody or significant physical constraint.

In sum, we conclude that Taggart's departure from her county of residency while on sheriff's parole is insufficient to constitute an escape within the meaning of section 4532, subdivision (b)(1). Accordingly, the evidence is insufficient to sustain her conviction.

We note, however, that Taggart's conduct is not without consequences. As she concedes, departure from the confines of parole constitutes a parole violation for which a parolee may be punished. Based upon such violation, and upon order of the county Board of Parole Commissioners, Taggart may be "returned to the jail from which … she was paroled and be confined therein for the unserved portion of … her sentence." (§ 3081, subd. (b).) Additionally, in computing the unserved portion of her sentence, "no credit shall be granted for the time between … her release from jail on parole and … her return to jail because of the revocation of … her parole." (§ 3081, subd. (d).) In Taggart's case, this would appear to involve additional confinement of approximately seven months.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings, to include resentencing in case Nos. BF157341B and BF153650A.

 

_____
SNAUFFER, J.

I CONCUR:

_____
FRANSON, J.

16.

LEVY, Acting P.J.

I respectfully dissent from the majority's opinion and its conclusion that appellant's departure from her county of residency while on sheriff's parole is insufficient to constitute an escape within the meaning of Penal Code section 4532, subdivision (b)(1).[1]

## I.    The relevant language in section 4532, subdivision (b)(1), applies to appellant.

Section 4532, subdivision (b)(1), reads in relevant part as follows:  "Every prisoner . . . convicted of a felony . . . who . . . is in the lawful custody of any officer or person, . . . who escapes or attempts to escape from . . . the custody of any officer or person in whose lawful custody he or she is . . . is guilty of a felony . . . ."

"The rules governing statutory construction are well settled.  We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent.  [Citations.]" (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)  We look first to the statute's language, giving effect to its plain meaning.  (*Ibid.*) "Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature.  [Citation.]  Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.  [Citation.]" (*Ibid.*)

Here, the critical questions are whether appellant was a "prisoner" convicted of a felony and in the "lawful custody" of any officer or person when she left Kern County and the state without permission.  It is undisputed that appellant was on parole following a felony conviction.  (Maj. opn., *ante*, at p. 2.)  As explained below, appellant was a prisoner and in the lawful custody of the Kern County Sheriff when she was on parole. Thus, section 4532, subdivision (b)(1), applied to her.

---

[1]    All future statutory references are to the Penal Code unless otherwise noted.

## II. Appellant was a prisoner under section 4532, subdivision (b)(1).

The law is clear that a parolee remains a constructive prisoner under the control of correctional authorities. (*In re Smith* (2008) 42 Cal.4th 1251, 1270; *In re Marzec* (1945) 25 Cal.2d 794, 797; *People v. Nicholson* (2004) 123 Cal.App.4th 823, 830; *People v. Lewis* (1999) 74 Cal.App.4th 662, 669.) The status of a parolee as a prisoner is no different than that of a prisoner who remains in confinement. (*People v. Howard* (1978) 79 Cal.App.3d 46, 49.)

Section 4532 was enacted in 1941. (Stats. 1941, ch. 106, § 15, pp. 1124–1125.) In the years leading up to its enactment, our Supreme Court made it clear that a parolee remains a prisoner. (*In re Application of Taylor* (1932) 216 Cal. 113, 115; *In re Application of Stanton* (1915) 169 Cal. 607, 610.) In 1939, about two years before section 4532 was enacted, our Supreme Court wrote that " 'parole' was originally a military term signifying the word of honor or promise of a prisoner of war that if he be released, he will comply with certain conditions, such as to refrain from bearing arms against his captors. As used in penology, the term has come to signify the release of a prisoner prior to expiration of his term of imprisonment conditioned upon his continuing good behavior during the remainder of the term." (*In re Application of Peterson* (1939) 14 Cal.2d 82, 85.)

When a statute uses terms that have been judicially construed, we are to presume "that the terms have been used in the precise and technical sense already placed upon them by the courts." (*People v. Nicholson, supra,* 123 Cal.App.4th at p. 832.) Nothing in the language of former section 4532, or its current version in subdivision (b)(1), suggests that the Legislature intended to exclude a parolee as a "prisoner" as that word is used in the statute. To the contrary, the term "prisoner" has been historically construed by the courts to include a parolee. We are to presume that the Legislature was aware, and continues to be aware, of that judicial construction and uses that term accordingly. (*People v. Nicholson, supra,* at p. 832.)

Moreover, in considering a statute's language, we are to harmonize the terms appearing in the statute's entire scheme and related statutes. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) Starting in 1941 and continuing today, the Legislature declared it a crime to assist a prisoner to escape or attempt to escape, including "any *paroled prisoner* whose parole has been revoked," or "any person in the lawful custody of any officer or person, . . ."[2] (§ 4534 (emphasis added); Stats. 1941, ch. 106, § 15, p. 1125.) In addition, starting in 1941 and continuing today, the Legislature also enacted section 3059 and declared that "any *paroled prisoner*" who leaves the state without permission "shall be held as an *escaped prisoner* and arrested as such."[3] (§ 3059 (emphasis added); Stats. 1941, ch. 106, § 15, p. 1113.) The statutory scheme and related statutes overwhelmingly indicate that the Legislature intended for parolees to remain prisoners for purposes of escape.

Based on our high court's opinions, both before the enactment of section 4532 and continuing thereafter, a parolee remains a prisoner. (*In re Smith, supra,* 42 Cal.4th at p. 1270; *In re Marzec, supra,* 25 Cal.2d at p. 797; *In re Application of Peterson, supra,* 14 Cal.2d at p. 85; *In re Application of Taylor, supra,* 216 Cal. at p. 115; *In re Application of Stanton, supra,* 169 Cal. at p. 610.) As such, it is beyond dispute that appellant remained a prisoner while on parole and we must presume that the Legislature has long been aware of this judicial construction. (*People v. Nicholson, supra,* 123 Cal.App.4th at p. 832.) Nothing in the language of section 4532, subdivision (b)(1),

---

**2**     In its entirety, section 4534 reads as follows:  "Any person who willfully assists any paroled prisoner whose parole has been revoked, any escapee, any prisoner confined in any prison or jail, or any person in the lawful custody of any officer or person, to escape, or in an attempt to escape from such prison or jail, or custody, is punishable as provided in Section 4533."

**3**     In its entirety, section 3059 reads as follows:  "If any paroled prisoner shall leave the state without permission of his or her supervising parole agency, he or she shall be held as an escaped prisoner and arrested as such."

reasonably suggests that the Legislature intended to exclude a parolee as a "prisoner" as that word is used in the statute. To the contrary, both the statute's entire scheme and the related statutes make clear that parolees are considered prisoners. Thus, there can be no doubt that appellant qualified as a prisoner as that term appears in section 4532, subdivision (b)(1).

**III.    As a prisoner on parole, appellant was in the lawful custody of the Kern County Sheriff.**

The term "custody" involves the control or restraint of another, such as when a person is deprived of his freedom in any significant way. (*People v. Drake* (1912) 162 Cal. 248, 249; *People v. Nicholson, supra,* 123 Cal.App.4th at p. 832.) Custody also occurs when a reasonable person is led to believe that his or her freedom of action is so deprived. (*People v. Parker* (1978) 85 Cal.App.3d 439, 443.) Lawful custody has been described as "restraint or confinement under color or authority of law." (*People v. Nicholson, supra,* 123 Cal.App.4th at p. 832, citing *In re Estrada* (1965) 63 Cal.2d 740, 749.)

In 1933, prior to the enactment of section 4532, our Supreme Court noted that a prisoner on parole remains " 'under the legal custody and control of the state board of prison directors . . . .' " (*In re Application of Albori* (1933) 218 Cal. 34, 38, quoting former section 1168.) Subsequent opinions make clear that, although outside prison walls, a parolee remains a prisoner on conditional release under the legal custody of authorities until officially discharged as a parolee. (*In re Jantz* (1984) 162 Cal.App.3d 412, 417 & fn. 3; *People v. Borja* (1980) 110 Cal.App.3d 378, 382.) Parolees are prisoners, and "[a] prisoner released on parole is not a free man." (*People v. Denne* (1956) 141 Cal.App.2d 499, 507.) Parolees enjoy fewer constitutional protections than ordinary citizens, such as a reduced expectation of privacy. (*People v. Hester* (2004) 119 Cal.App.4th 376, 392.)

4

Our high court has commented that a convicted felon released on parole "is subject to substantial restraints" on his or her liberty. (*People v. Nuckles* (2013) 56 Cal.4th 601, 609.) A state inmate who becomes a parolee "remains in the legal custody" of correctional authorities through the remainder of his term and must comply with all terms and conditions of parole. "A parolee's conviction of a felony 'justifies imposing extensive restrictions on the individual's liberty. . . .'" (*Ibid*.)

In this matter, the Kern County Sheriff exercised substantial control over appellant while she served her remaining jail term on parole. Her parole occurred under numerous specific terms and conditions. Her movements were limited, and she could not travel outside the county, let alone outside the state, without permission from the appropriate parole authority. In addition to travel restrictions, appellant had other limitations and obligations placed upon her. She could not associate with certain people; she could not drink liquor; she was subject to testing; she was obligated to report each month; she had to pay a monthly supervision fee; and she had to attend drug counseling. (Maj. opn., *ante*, at p. 2, fn. 2.)

Appellant accepted these parole terms in writing and she agreed to comply with all conditions contained in the parole agreement. When accepting these terms, appellant verbally told a parole board commissioner that she understood the rules before signing the order granting parole. She was verbally told, and she expressed understanding, that she could be charged with escape if she left the county without permission. It is undisputed that, while serving that parole term, she drove to Colorado without permission from the appropriate parole authority. After she was taken back into actual custody, appellant acknowledged that she could be charged with escape because she left the county without permission.

Although she was no longer confined in jail, appellant was not free while on parole, and she did not enjoy full constitutional protections. She was deprived of her freedom in significant ways. Thus, under the totality of the terms and conditions of her

5

parole, and apart from a mere travel restriction, appellant was in the lawful custody of the Kern County Sheriff while she served her remaining sentence outside the jail walls.

The majority concludes that appellant was not in lawful custody because her parole involved only "minimal" physical constraint. (Maj. opn., *ante*, at p. 10.) The majority states that the "only physical limitation" on appellant's parole was her requirement to remain within the county. (*Id.* at p. 12.) According to the majority, "actual" or "significant" physical custody or constraint is necessary to find "lawful custody." (*Id.* at p. 15.)

The majority's approach attempts to rewrite the statute. The majority adds terms, such as "actual" or "significant" physical custody or constraint, to define lawful custody. Not only is this approach incorrect, it is unnecessary because the term "lawful custody" is unambiguous. I decline to add to or alter these words to accomplish a purpose that does not appear on the face of the statute or from its legislative history. Instead, we are to give effect to a statute's plain meaning. (*Burden v. Snowden, supra,* 2 Cal.4th at p. 562.)

Moreover, in focusing on the travel restriction, the majority fails to account for the numerous other ways the Kern County Sheriff exercised control and confinement over appellant. The entire terms and conditions of her parole limited her actions and imposed obligations on her. Indeed, our Supreme Court has noted that a convicted felon released on parole "is subject to substantial restraints" on his or her liberty. (*People v. Nuckles, supra,* 56 Cal.4th at p. 609.) In any event, even if based solely on the travel restriction, a reasonable person in appellant's position would have believed that her freedom had been significantly deprived. As such, under any definition, the Kern County Sheriff exercised lawful custody of appellant while she was on parole. Under its clear language, section 4532, subdivision (b)(1), applied to her.

Establishing lawful custody based on all terms and conditions of parole does not blur the line regarding when an "escape" might occur, a contention the majority suggests in its opinion. (Maj. opn., *ante*, at p. 15.) To the contrary, an "escape" occurred because

6

appellant left the defined parameters of her confinement without permission, a point the trial court noted when it denied her motion filed pursuant to section 1118.1. In contrast, a mere failure to comply with other terms and conditions of parole would not represent substantial evidence of an escape under section 4532, subdivision (b)(1). The majority's concern is unfounded.

The majority contends that a "broad interpretation" of lawful custody would render other provisions of section 4532 surplusage. For example, according to the majority, it would have been unnecessary for the Legislature to specify that a prisoner could escape from a hospital or home detention if lawful custody encompassed "all forms of custody." (Maj. opn., *ante*, at p. 11.) In addition, the majority argues that, because section 4532, subdivision (b)(1), lists specific penal facilities, the term "lawful custody" cannot apply to parolees. The majority claims that appellant's parole is "dissimilar" from the "classes of custody" enumerated in the statute. (Maj. opn., *ante*, at p. 12.) These contentions are unpersuasive.

In *In re Culver* (1968) 69 Cal.2d 898 (*Culver*), our high court explained that the Legislature placed the words "lawful custody of any officer or person" in section 4532 after other types of custody to cover those persons "who had already been incarcerated." (*Id.* at p. 902.) The term "lawful custody" encompasses "all custody outside the walls of the named custodial institutions . . . ." (*Ibid.*) As such, *Culver* repudiates the majority's surplusage argument because the term "lawful custody" does not render other provisions of section 4532 irrelevant.[4]

---

[4] It is important to note that, when the Legislature reenacted section 107 in 1941 as section 4532, it left escapes from institutions other than prisons (e.g., reformatories, county hospitals) in section 107. (*Culver, supra,* 69 Cal.2d at p. 903.) Section 107 still exists and applies to escapes (or their attempts) from any public training school, reformatory or county hospital by a prisoner charged with or convicted of a felony. (§ 107.)

Further, *Culver* makes clear that, despite the majority's assertion to the contrary, appellant's parole was not dissimilar from the custody enumerated in section 4532, subdivision (b)(1). Instead, section 4532 was intended to apply to "all custody" outside the walls of the named custodial institutions, such as jail. (*Culver, supra,* 69 Cal.2d at p. 902.) While on parole, appellant continued to serve her jail term. Although outside the jail walls, she remained a prisoner on conditional release under the legal custody of authorities until officially discharged as a parolee. (See *In re Jantz, supra,* 162 Cal.App.3d at p. 417 & fn. 3; *People v. Borja, supra,* 110 Cal.App.3d at p. 382; *People v. Denne, supra* 141 Cal.App.2d at p. 507.) The plain language of section 4532, subdivision (b)(1), applied to appellant's custody.[5]

Finally, aside from the statute's plain language, the statutory scheme indicates that the term "lawful custody" applies to prisoners on parole. Under section 4534, which appears under the same escape article as section 4532, subdivision (b)(1), it is a crime for any person to assist a prisoner to escape or attempt to escape, including "any paroled prisoner whose parole has been revoked," or "any person in the lawful custody of any officer or person, . . ." (§ 4534; Stats. 1941, ch. 106, § 15, p. 1125.) A reasonable interpretation of section 4534 establishes that a paroled prisoner, whose parole has not been revoked, qualifies as a person in the lawful custody of an officer. Such a reading harmonizes the terms appearing in the entire scheme and related statutes, a goal we are to

---

[5] In *Culver*, the Supreme Court stated that the lawful custody language applied to prisoners "who might be *temporarily* in custody outside the walls of a custodial facility, . . . ." (*Culver, supra,* 69 Cal.2d at p. 901, emphasis added.) The Supreme Court repeated this statement in *People v. Diaz* (1978) 22 Cal.3d 712, 715). Neither *Culver* nor *Diaz* however, explained how this specific conclusion was reached or what "temporarily" meant. In any event, neither *Culver* nor *Diaz* analyzed whether the Legislature intended to include parolees as prisoners under the escape statutes. To that extent, neither *Culver* nor *Diaz* can be read as excluding parolees as prisoners under section 4532 because cases are not authority for propositions not considered. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.)

achieve when considering a statute's language. (*People v. Gonzalez, supra,* 2 Cal.5th at p. 1141.)

In conclusion, it is undisputed that appellant was placed on sheriff's parole when she was released from the confines of jail to complete her sentence. As such, she was in the lawful custody of the Kern County Sheriff. She left the county, and indeed the state, without permission. A retake/arrest warrant was issued for her and she was apprehended in Colorado. Based on these facts, it appears beyond question that appellant was a prisoner who escaped her lawful custody. Thus, the plain language of section 4532, subdivision (b)(1), applies to her. Accordingly, I would affirm the judgment.

_____
LEVY, Acting P.J.